## HEAD *vs.* BRIDGES *et al.*

1. A sheriff may serve copies of a bill of exceptions on the defendants in error, and his official entry on the bill of exceptions is sufficient evidence of service. Nor does it make any difference whether such service and entry be made before or after filing. Official service by the sheriff stands on a different plane from that by counsel or a party.

(*a.*) As to service in other counties, it is unnecessary to decide, as it does not arise in this case.

2. If the chancellor puts his refusal of an injunction on the facts which were controverted, or refuses an injunction generally, this court will not reverse the judgment, unless it be made to appear that the discretion of the chancellor has been abused; but where the chancellor rested his judgment on the existence of a common law remedy in another county, and the want of jurisdiction in the superior court of the county where the bill was filed, and such grounds were erroneous, a reversal will be granted.

(*a.*) The bill charged, and the facts, from complainant's side, were, in brief, as follows: Complainant was called to account as executor by the legatees of the estate before the court of ordinary of Jasper county; the case was transferred by appeal to the superior court, was brought by exception to the Supreme Court, and a new trial was granted; pending the case so returned, this bill was filed. It rested upon the equity, that complainant had in good faith applied for his discharge as co-executor with the mother of the legatees; that he obtained, as he thought, a valid discharge; that though this discharge was held to be invalid because this citation appeared not to be in time, yet to show good faith on his part, he alleges that it has been found that service of the citation was actually made in time; that when thus discharged, as he *bona fide* thought,

the administration was turned over to his co-executrix, who was guilty of all, or most, of the mal-administration after his retirement; that he is entitled to contribution from her, and to subject her share of the estate; that she has colluded with her children to put the whole burden on him; that all parties reside in Monroe county:

*Held*, that there is equity in the bill, and the superior court of Monroe county has jurisdiction to grant relief.

(*b*.) The judgment is reversed, with directions that the injunction prayed for be granted, the bill be reinstated (if dismissed), and proceed to trial on the merits, provided that complainant shall give ample bond and security to respond to the legatees.for such decree as they may eventually recover against him, if any.

(*c*.) The bill may be amended as may be necessary to a full adjudication of the rights of all parties, and in such manner as not to collide with the other bill pending in the court.

October 16, 1883.

Practice in Supreme Court.    Injunction.    Equity.    Administrators and Executors.    Jurisdiction.    Before Judge STEWART.    Monroe County.    At Chambers.    November 29, 1882.

The facts are set out in the second head-note and the decision.

A. D. HAMMOND; W. A. LOFTON; JOHN I. HALL, for plaintiff in error.

BERNER & TURNER ; J. H. LUMPKIN, for defendants.

JACKSON, Chief Justice.

1. A motion was made to dismiss this writ of error, on the ground that the bill of exceptions was not served until after it had been filed in the clerk's office. It was served by the sheriff, the regular officer of the superior court to serve copies of such papers as are entrusted to him for service by courts of record of this state. Code, §361. His service of copies of bills of exception has been recognized as valid by this court, and his return of such service, entered on the original bill of exceptions, need not be under

oath, thereby recognizing his official oath to bind him.   41 *Ga.*, 682 ; 50 *Ib.*, 369.

These decisions recognize the superiority of the service of the sheriff over that of the party or his counsel, because it is official.   The party must verify his service of a copy by his oath ; the counsel his in the same way by oath ; because they have never taken an official oath which covers the service of either, and because they are interested. Thus the official oath of the sheriff is that under which he makes the return, and what is that oath ?   It is to execute all writs, etc., "and in all things well and truly, without malice or partiality, perform the duties of the office of sheriff," etc.   Code, §348.  Therefore, one of those duties is to serve copies of bills of exceptions, when placed in his hands therefor. Does it make any difference, if it be served within the time fixed by law, whether the sheriff, whose official duty under oath is to serve it, as held by this court, serve before or after filing?   None that we can see.

The reason on which the decisions that the counsel cannot serve after filing, or the party either, is that neither can be safely entrusted with the original after filing, lest they might alter it , but the sheriff is no more likely to alter the bill of exceptions than any other writ or process which he is required to serve; and as the cases cited make it his duty to serve these copies under his official oath, we do not see any reason why he should not be entrusted with the original to make the entry thereon, there being no more danger of his altering this original than another.

The argument *ab inconvenienti* in regard to service in other counties, the lack of any law for second originals, the necessary use, therefore, of the original bill to make the return upon, does not apply to this case, all the defendants being residents of the county of Monroe. In such a case, however, the plaintiff in error would be compelled to start in time with his copies for the different counties, and even then would find much trouble and delay, if there were many counties in which to have the copies served;

and therefore, he would probably serve, himself, or by his counsel, and upon the counsel of the other side. But sufficient unto the day is the evil thereof. No second original is needed here; no necessity exists to take the original bill of exceptions out of the county, or of the court-house, and the evils and troubles suggested do not exist here.

The motion to dismiss the writ of error is denied.

2. Is there equity in the bill, and should the injunction have been granted?

The bill charges, and the facts, from complainant's side, show that the complainant was called to account by the legatees, before the ordinary of Jasper county; that the case was transferred, by appeal, to the superior court; thence brought to this court by him, and a new trial awarded. Pending this case, so returned for a new trial, the bill before us was filed, and was predicated upon the broad equity that complainant had, in good faith, applied for his discharge as co-executor with the mother of defendants; that he obtained, as he thought, a valid discharge; and though held invalid by this court, when the case was here from the Jasper appeal trial, because it appeared on the face of the record of that discharge that the citation was not in time, yet to show the *bona fides* of his contract, he alleges that the parties were served in time, and proves the fact by depositions thereof by the ordinary, and others; that when thus discharged, as he honestly thought, the administration was turned over by him to the co-executrix; that she was guilty of all the mal-administration, or most of it, at least, after his retirement therefrom, and that, therefore, he is entitled to a decree against her, and to subject her share of the estate of testator to such just contribution as equity will cause her to make to him; that she has colluded with her children to put the whole burden on him, notwithstanding she is really the guilty party, and the mismanagement occurred after his virtual resignation of the trust; and several circumstances, such as her failure to assist in the defence, though both were cited, the

v 72-4

attempt to sell the lands of the estate, her failure to con-
sult, her refusal to participate in counsel, or talk with his
counsel, and other circumstances are adduced to show this
collusion ; that he can get no decree against her for con-
tribution in Jasper, but only in Monroe, as she resides in
Monroe, and therefore Monroe county has jurisdiction of
the case, so far as relief to him is concerned, against her,
and her children also are in that county, and none resident
in Jasper.

The chancellor refused the injunction. Had he put the
refusal on the facts which were controverted by the other
side, or had he put it generally, this court, under the long
current of its decisions, would not have reversed the judg
ment, unless, on a close and critical examination of the bill
and answers and depositions *pro* and *con*, it were made
to appear that the discretion vested in the chancellor had
been abused. But the chancellor rests his judgment on
the common law remedy in Jasper, and the want of juris-
diction in the superior court of Monroe county. That is
the only county which has jurisdiction, if substantial relief
be prayed for against the co-executrix, for that is the county
of her residence, and no defendant to the bill resides in
Jasper. Neither the common law case in Jasper, nor
equity proceedings in connection with, or ancillary to, the
cause pending there, would avail complainant, for want of
jurisdiction there for that purpose. We are clear, there-
fore, that the chancellor erred in refusing the injunction
on that ground.

And inasmuch as there is equity in the bill, and the
facts of record here, however stubbornly contested, appear
to us to require a trial before the jury to settle all the
equities between these parties, where all the facts can be
more thoroughly sifted and the truth elicited, the judg-
ment is reversed, and the chancellor is directed to grant
the injunction, to reinstate the bill if dismissed, and pro-
ceed to the trial thereof on the merits, provided that com-
plainant shall give ample bond and security to respond to

the legatees for such decree as they may eventually recover, if any, against him.   54 *Ga.*, 378–9;  63 *Ib.*, 438;  67 *Ib.*, 215;  29 *Ib.*, 34.

When the bill shall thus be before the court for trial, it may be so amended as may be necessary to a full adjudication of the rights of all parties, and in such manner as not to collide with the other bill pending in court.  Equity is ever liberal in allowing amendments, in order to reach the real justice due to parties.

Judgment reversed, with directions indicated above.