## 24224. MANOR v. THE STATE.

DUCKWORTH, Chief Justice. 1. *Code* § 59-112, as amended, is not unconstitutional for any reason assigned because it exempts certain citizens from jury duty and thereby prevents a cross section of the population from being considered as prospective jurors. Rawlins v. Georgia, 201 U. S. 638 (26 SC 560, 50 LE 899). Nor was it error to exclude all jurors who were opposed to capital punishment since these jurors specifically stated they would never consider giving the supreme penalty if they found the accused guilty. *Code* § 59-806 is not unconstitutional for any reason assigned. Further, Ga. L. 1953, Jan. Sess., pp. 256, 257, authorizes jurors in one-county judicial circuits to serve not less than 20 days in any calendar year "without regard to the number of weeks in which the service is rendered" and controls over *Code* § 59-710 which requires the drawing of separate panels of petit jurors for each week of the court when the superior court is held for longer than one week. None of the challenges seeking to disqualify the jury is meritorious.

2. The admission of the defendant that during the period in which he was committing a crime he physically assaulted the deceased, together with all the facts and circumstances surrounding the death of the deceased by violent means was sufficient to support the verdict of guilty of murder, and the general grounds of the motion for new trial are without merit. *Code* § 26-1004; *Williams v. State*, 222 Ga. 208 (149 SE2d 449).

3. After the reindictment of the accused (see *Manor v. State*, 221 Ga. 866 (148 SE2d 305)), who was then in custody, no new arrest was necessary, and a retaking of his fingerprints for identification and comparison with those found at the scene of the crime would have been a complete duplication of events totally unnecessary since the law does not require the doing of useless things. Nor has the original arrest of the accused been shown to have been illegal as contended. Indeed, the defendant admitted his presence in the home, and

the offer of the fingerprints to prove his entry into the home merely corroborates the admissions of the accused. We find no error in admitting the fingerprints regardless of when they were taken. *Code* § 38-709; Smith v. United States, 324 F2d 879; United States v. Kelly, 55 F2d 67. Further, the reindictment put all questions involving the arrest of the accused out of consideration on this trial, and the attacks on the warrant serve no useful purpose. Nor was the request to charge on the duty of arresting officers or the rights of persons in custody who are subject to interrogation relevant or material to any issue involved. All enumerations of error that the issue of his fingerprints arose out of an illegal arrest are completely without merit.

4. The defendant's claim that he is required to disclose his defenses in that *Code Ann.* § 27-3001 (Ga. L. 1953, Nov. Sess., p. 478) requires that the court approve the expenses to be paid defense counsel as a matter of public record is completely unfounded since this disclosure occurs after trial and not before. Nor has there been any showing here that the amount allotted was insufficient to offer an adequate defense or violates the 14th Amendment of the United States Constitution. The motion for continuance based on the above was refused in the broad discretion with which the trial court is vested and no abuse has been shown. *Code* § 81-1419; *Benjamin v. Weintraub,* 169 Ga. 770, 775 (151 SE 381). There is no merit in the assignments of error involving the denial of this motion.

5. Since the accused admitted an assault in which he pushed the deceased and she either fainted or "he knocked her too hard" and that he then picked her up and placed her in a bathtub, the nude pictures showing the bruised body in the bathtub were relevant to the case although certainly highly prejudicial to him, and there is no merit in the objection to the allowance of the photographs as being inflammatory since they show the marks on and the condition of the body after her death. *Thompkins v. State,* 222 Ga. 420 (5) (151 SE2d 153), and citations therein.

6. The testimony showed the deceased was wearing a seersucker suit on the day she was last seen alive and that she used safety pins frequently to keep her clothing tight because she was very thin; thus the torn scrap of seersucker cloth with a safety pin attached, found in the bathroom with the body,

was sufficiently identified to be relevant and material to the issues involved, since the suit was missing. There was no error in allowing the scrap of cloth and safety pin in evidence.

7. Since a new trial was ordered after reindictment because of the conditions surrounding the keeping of the defendant nude in his cell after his arrest, it was no error to refuse to allow defense counsel to question a police officer in regard to whether or not he was nude when he interrogated him since this evidence would serve no useful purpose. The officer did not testify to any admission made during any interrogation, and the defense was properly not allowed to go into this matter. It appears that the only purpose of this cross examination would be a calculated attempt to influence or inflame the jury in favor of the accused because of possible police brutality on matters which were not relevant or material. The court did not err in refusing to allow the inquiry.

8. *Code Ch.* 38-7 applies to private writings and hence *Code* § 38-709 requiring that other writings, proved or acknowledged to be genuine which are to be admitted in evidence are to be submitted to the opposite party before he announces himself ready for trial has no application to the introduction of fingerprints as in this case. There is no merit in the failure of counsel to submit any fingerprint data to the defense before the trial.

9. The testimony of a deputy sheriff showed clearly that he had been unable to serve a subpoena on a former member of the police department, and since he could not be served, the use of his former testimony was authorized by *Code* § 38-314 since he was inaccessible. There is no merit in the complaint that the State failed to show he was not accessible.

10. The request to charge the comparison of death by weapons likely to produce death and death by drowning was argumentative and not impartial but more helpful to the accused. The court did not err in refusing to give this charge. *Smithwick v. State*, 199 Ga. 292 (34 SE2d 28).

11. Since there was other evidence from which the jury could have found the defendant guilty of murder other than the admissions of the defendant, it was not error to refuse to charge that malice will not be presumed where proof of the homicide is derived solely from an admission of the defendant which itself presents an exculpatory explanation, excuse or mitigation as requested.

12. Nor was it error to refuse to give the various requested charges on involuntary manslaughter since the evidence did not authorize them. Further, since the language of *Code* § 26-1009 would control the results when death occurs in the commission of a felony, it was not error to fail to give the requested charge on the consequences of acts.

13. After charging the definition of involuntary manslaughter and that where an involuntary killing occurs in the commission of an unlawful act which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a crime punishable by death or confinement in the penitentiary, the offense shall be deemed and adjudged to be murder, which in substance is *Code* § 26-1009, the court thereafter charged that if the jury found beyond a reasonable doubt that the defendant broke and entered the dwelling with the intent to commit a felony or larceny, and after so breaking and entering, killed the deceased in the manner set forth in the indictment, and if they found the killing was the natural, reasonable and probable consequence of the crime, the jury "would be authorized to convict the defendant of murder, and this you would be authorized to do whether the defendant intended to kill the deceased or not." There is no merit in the alleged error in this instruction which carefully charged the jury that if they found "beyond a reasonable doubt" that the defendant "killed the deceased in the manner set forth in the indictment" while in the process of committing a felony, the jury "would be authorized to convict the defendant of murder." The charge is correct, apt and based on the evidence submitted.

14. The court allowed in evidence over objection and motions for mistrial (1) a letter written to the Federal Bureau of Investigation by the Savannah Police Department which referred to the fact that the accused was being held for "multiple felonious offenses" and was "known" to the Bureau and referred to his F. B. I. number or record, as well as (2) a fingerprint record of the accused showing aliases "Robert Mainer," "Henry Bino," and "Henry Bins"; his F. B. I. Number (same as in the letter); and charges or offenses of "1. Inv: Murder by strangulation—Rape—Burglary—Poss. NTPW" as putting his character in evidence by referring to the various felonious charges, not all of which he was being tried for here. There was no evidence of rape or possession

of whiskey before the court. The court ordered the obliteration of the multiple charges from the fingerprint card, but when it was found that the card had gone out with the jury without their being obliterated, to which counsel further objected and requested the court to remove the highly prejudicial matter from the jury, the court refused to remove it. Clearly the reference to other crimes not shown to be connected with the one on trial, the reference to an F. B. I. record, and the references in the letter which serve no useful or relevant purpose, squarely put the defendant's character as an alleged criminal even without proof of conviction, in evidence, and it was highly prejudicial and harmful to him. *Code* § 38-202; *Fluker v. State*, 184 Ga. 809 (193 SE 749); *Bacon v. State*, 209 Ga. 261 (71 SE2d 615); *Howard v. State*, 211 Ga. 186 (84 SE2d 455); *Wilson v. State*, 212 Ga. 412 (93 SE2d 354); *Barber v. State*, 95 Ga. App. 763 (98 SE2d 575); *Story v. State*, 95 Ga. App. 455 (98 SE2d 42); *McFarlin v. State*, 95 Ga. App. 425 (98 SE2d 99). The court erred in allowing this matter to be in evidence and in allowing it to go out to the jury room with the jury. The errors enumerating this issue are meritorious requiring the grant of a new trial.

15. In view of the evidence the request to charge on the different theories or conclusions that the evidence might point out, one consistent with guilt and the other innocence, was not a proper one, and the court did not err in refusing to give it as requested.

16. Since the jury may make a recommendation for mercy with or without reason, any charge that in determining the punishment the jury should consider the defendant's intelligence, his mentality and his comprehension in order to determine the degree of punishment would not be a correct statement of the law and would have improperly restricted the jury in its discretion in making a determination of whether or not to recommend mercy in which event the punishment would be life imprisonment. The court did not err in refusing to give this request.

17. Defense counsel sought permission to amend his opening statement when the State allegedly did not offer to prove certain matters in the submission of evidence which had been offered during the first trial by seeking to advise the jury of counsel's reasons for making the opening statement since he thought the State would prove the same evidence. The judge

instructed him he would be allowed to tell the jury anything he wanted to but would not be allowed to refer to the evidence offered at the first trial and he would have the right to make any reasonable deductions from this evidence, but since the jury had no knowledge of the evidence submitted at the first trial, counsel would not be allowed to discuss it. The court did not err in thus restricting counsel to the evidence submitted at this trial. None of the grounds of error going to this issue is meritorious.

18. The statutes of this State authorizing capital punishment and providing that juries in capital cases may recommend mercy, which has the effect of reducing punishment to life imprisonment in the discretion of the jury, are not vague and uncertain although they fix no standards for recommending mercy, and no violation of the Sixth and Fourteenth Amendment of the United States Constitution as far as Negroes convicted of crime has been shown. Nor does a death penalty amount to cruel and unusual punishment forbidden by the Federal Constitution. None of the alleged errors attacking the constitutionality of these statutes or their application is meritorious.

19. However, for the error considered in Headnote 14, a new trial will be necessary.

*Judgment reversed. All the Justices concur.*

ARGUED SEPTEMBER 12, 1967—DECIDED SEPTEMBER 21, 1967.

*Kravitch & Hendrix, Aaron Kravitch, John W. Hendrix, E. H. Gadsden,* for appellant.

*Andrew J. Ryan, Jr., Solicitor General, Andrew J. Ryan, III, Arthur K. Bolton, Attorney General,* for appellee.